IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02857-GPG


BRIAN HICKS,

        Plaintiff,

v.

SPRINT NEXTEL CORPORATION,
SPRINT NEXTEL COMPANY, LP,
SPRINT COMMUNICATIONS COMPANY, LP, and
SPRINT SPECTRUM, LP,

        Defendants.

---

ORDER OF DISMISSAL

---

        Plaintiff, Brian Hicks, is in the custody of the Federal Bureau of Prisons and

currently is incarcerated at the McCreary United States Penitentiary in Pine Knot,

Kentucky.  Plaintiff initiated this action on October 20, 2014, by filing *pro se* a Complaint

pursuant to 28 U.S.C. §§ 1331 and 1332 seeking money damages and declaratory relief

for Defendants' alleged failure to comply with the Stored Communications Act ("SCA"),

18 U.S.C. §§ 2701, *et seq.*  Specifically, Mr. Hicks asserts that Defendants violated the

SCA by intentionally failing to preserve and produce cell tower records after receiving

legal requests for the information from law enforcement.  He further alleges that by

failing to comply with the SCA, "Defendants knowingly prevented him from obtaining

these records and effectively prevented him from using key evidence that would have

acquitted him of murders charges in [Denver County District Court Case No.

08CR10479]."

        Upon review of the Complaint, Magistrate Judge Gordon P. Gallagher

determined that it is clear from the face of the Complaint that the cause of action accrued in January 2011 during Plaintiff's state criminal homicide trial because Plaintiff had reasonable notice to discover Defendants' alleged failure to preserve cell tower records when he heard conflicting testimony regarding Sprint's data retention policy. (*See* ECF No. 16.)  Magistrate Judge Gallagher, therefore, directed Plaintiff to respond and show cause why the action should not be dismissed as time-barred because more than two years have passed since the cause of action accrued.  (*Id.*)  On March 12, 2015, Plaintiff filed a Response (ECF No. 19) and a Second Motion to Amend (ECF No. 20).

The Court must construe the Complaint and other filings liberally because Plaintiff is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  If the Complaint reasonably can be read "to state a valid claim on which the plaintiff could prevail, [the Court] should do so despite the plaintiff's failure to cite proper legal authority, [his] confusion of various legal theories, [his] poor syntax and sentence construction, or [his] unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110.  However, the Court does not act as an advocate for a *pro se* litigant.  *See id.*  For the following reasons, the Court will dismiss the Complaint and action as barred by the statute of limitations.[1]

In the Complaint, Plaintiff alleges that on January 31, 2011, during his homicide trial, "Sprint Nextel representative Kerri Scarbo testified for the prosecution that Sprint

---

[1]A court may "consider affirmative defenses sua sponte" for purposes of dismissal "when the defense is obvious from the face of the complaint and no further factual record is required to be developed." *Fractus v. Deland*, 49 F.3d 673,674-75 (10th Cir. 1995) (quoting *Yellen v. Cooper*, 828 F.2d 1471, 1476 (10th Cir.1987) (internal quotations omitted)).

did not provide the [Denver Police Department] with the records" and that "any cell site records generated in 2006 would have been purged from Sprint's database by the time the [Denver Police Department] served its warrants, because Sprint was only retaining cell tower records for 60 days in 2006." (ECF No. 1 at 11-12, ¶¶ 24, 28.) Mr. Hicks further alleges that Ms. Scarbo testified that "Sprint's data retention policy changed in 2007, extending the purge date for cell site records from 60 days to 18 months." (*Id.* at 12, ¶ 30.) Mr. Hicks also alleges that prior to trial, his "defense attorneys and Mr. Hicks himself contacted Sprint [and was] informed that Sprint retained cell site records for at least 18 months, but up to 2 years" and that the "18-24 month retention policy had always been in effect." (*Id.* at 9, ¶¶ 18-19.) In his proposed Amended Complaint, Mr. Hicks alleges that "[s]ome of the most important defense motions filed on Mr. Hicks's behalf related to the DPD's efforts in obtaining cell tower records . . ." and that "[t]he issue of whether the DPD actually obtained the cell tower records . . . was argued at length throughout the pretrial proceedings in the homicide case." (ECF No. 20-1 at 13, 15, ¶¶ 18, 24.) Finally, Mr. Hicks asserts that his defense "possessed information from Sprint indicating that the records were forwarded to [the DPD] . . .[h]owever, on January 31, 2011, during Mr. Hicks' trial . . . Sprint Nextel representative Kerri Scarbo testified for the prosecution stating that Sprint did not provide the DPD with the records." (ECF No. 20-1 at 15, ¶ 24.) Based on these allegations, Mr. Hicks asserts that Defendants knowingly failed to preserve and produce cell phone site records as required under § 2703(f) of the SCA.

Under the SCA, "[a] civil action may not be commenced later than two years after the date upon which the claimant first discovered or had a reasonable opportunity to

discover the violation." 18 U.S.C. § 2707(f); *see also Maddalena v. Toole,* Nos. 13-cv-4873-ODW, 13-cv-6007-ODW, 2013 WL 5491869, at *4 (C.D. Cal. Oct. 1, 2013) (holding that the limitations provision of the SCA "do[es] not require that the claimant have actual knowledge of the violation.  Rather, [18 U.S.C. § 2707(f)] demands only that the claimant have had reasonable notice to discover the violation."); *see also Sparshott v. Feld Entertainment, Inc.,* 311 F.3d 425, 428 (D.C. Cir. 2002) (holding that statute of limitations "bars a suit if the plaintiff had such notice as would lead a reasonable person either to sue or to launch an investigation that would likely uncover the requisite facts."); *Davis v. Zirkelbach,* 149 F.3d 614, 618 (7th Cir. 1998) (describing the inquiry as requiring "enough to put [the plaintiff] on 'inquiry notice' that his rights may have been invaded.")

In the Response, Plaintiff contends that he "was convinced that the DPD was engaged in foul play . . .[a]nd his suspicions continued on through pretrial proceedings and throughout the trial" that the Denver Police Department had received the cell phone tower records despite Ms. Scarbo's testimony under oath that the records were purged before law enforcement requested them. (*See* ECF No. 19 at 6.)  Mr. Hicks further argues that this contradictory information did not lead him to suspect a possible violation of his rights, and that "it was not until 2013 when [he] later obtained the entire trial record, compared [Ms.] Scarbo's testimony with other facts in the record, and researched the law related to cell tower data retention, that he had a reasonable opportunity to discover the SCA violation."  (*Id.* at 7.)

This argument is unavailing.  First, Mr. Hicks does not provide any specific allegations as to what "other facts in the record" led him to discover a possible violation

of the SCA. "[I]n analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not [his] conclusory allegations." *Hall*, 935 F.2d at 1110.

Moreover, Mr. Hicks' allegations in the Complaint demonstrate that both he and his trial attorneys were aware of conflicting information regarding Sprint's data retention policy and whether Sprint could have or did preserve the records when the Denver Police Department made its legal request for them in November 2007. Specifically, Mr. Hicks alleges that Sprint informed defense counsel during its pretrial investigation that Sprint's retention policy had always been 18 to 24 months and that it had provided cell tower records to the Denver Police Department. Mr. Hicks further alleges, however, that Sprint's representative testified during trial that cell tower records generated in 2006 were purged after 60 days and thus, could not have been preserved when law enforcement requested records in November 2007. Moreover, Mr. Hicks concedes that Sprint's retention policy and whether the Denver Police Department received the cell tower records were "argued at length throughout the pretrial proceedings in the homicide case." (ECF No. 20-1 at 15, ¶ 24.) Thus, although Mr. Hicks may not have had actual knowledge of a SCA violation during his homicide trial, Mr. Hicks was put on inquiry notice of discrepancies concerning Sprint's data retention policies and that his rights may have been violated when he heard conflicting testimony from Sprint's representative on January 31, 2011. *See e.g., Davis,* 149 F.3d at 618 (finding that plaintiff's claim accrued when other party informed plaintiff that some conversation had been taped even though plaintiff did not have actual knowledge of the violation, only inquiry notice that his rights might have been invaded).

Moreover, awareness of the alleged discrepancies regarding whether Sprint could have preserved cell tower records generated in 2006 would have led a reasonable person to investigate the issue to uncover facts supporting a violation.  *See e..g, Sparshott,* 311 F.3d at 429 (explaining that plaintiff's subjective state of mind is irrelevant and that there is no need that someone actually "discover" or be aware of the violation; "[r]ather, the question is whether the person had a *reasonable opportunity* to discover the violation.") (emphasis in original).   Here, Mr. Hicks concedes that both he and his counsel further investigated the issue in the days following Ms. Scarbo's testimony.  Specifically, Mr. Hicks asserts that his counsel filed "motions to postpone the trial to further investigate the data retention policy" and that he "subsequently contacted Sprint Nextel attempting to obtain the retention policies."  (ECF No. 19 at 10; ECF No. 20-1 at 17-18, ¶¶ 32. 34.)  These allegations directly contradict Mr. Hicks' argument that "[i]t was not until [he] later obtained the entire record, including transcripts of [Ms.] Scarbo's testimony, that he had a reasonable opportunity to discover that her testimony was likely false and there was a potential SCA violation."  (ECF No. 19 at 10.)  It is obvious from the face of the Complaint that Plaintiff had reasonable notice to discover the alleged failure to preserve and produce cell phone records based on Ms. Scarbo's contradictory testimony during Plaintiff's trial.  Therefore, Plaintiff's SCA claim accrued on January 31, 2011.  The fact that Mr. Hicks alleges that he did not actually discover the alleged violation until after he received and reviewed the trial transcripts and researched the law in 2013 is irrelevant as the limitations provision of the SCA "do[es] not require that the claimant have actual knowledge of the violation."  *See Maddalena,* 2013 WL 5491869, at *4.

In the Response, Mr. Hicks also argues that he is entitled to equitable tolling because Defendants fraudulently concealed facts relating to Sprint's retention policies and that this alleged fraudulent concealment prevented him from verifying whether the cell tower records were in Sprint's possession at the time the Denver Police Department requested preservation of the information. (*See* ECF No. 19 at 12-13.) Plaintiff further asserts that he "had no reason to doubt [Sprint's] testimony during trial" and that was "impossible for [him] to discover the deception without first having the record before him." (*Id.*)

This argument also is without merit. Although, Plaintiff argues that he had no reason to doubt Sprint's testimony during his trial, his allegations in the Complaint repeatedly highlight his knowledge and suspicions of the discrepancies between Sprint's trial testimony and the information Sprint told Plaintiff's defense counsel during its pretrial investigation of Sprint's data retention policies. (*See e.g.,* ECF No. 1 at 9, 11-12, ¶¶ 18, 19, 24, 28, 30; ECF No. 20-1 at 13, 15, 17-18, ¶¶ 18, 24, 32, 34.) Thus, Plaintiff was on notice of a possible violation of his rights when he heard Sprint's conflicting testimony during his trial in January 2011.

Plaintiff does not allege sufficient facts justifying equitable tolling. *See Perkins v. Johnson,* 551 F. Supp.2d 1246, 1253 (D. Colo. 2008) (holding that plaintiffs did not allege that defendants' fraudulent concealment prevented investigation of evidence). Here, Sprint's contradictory trial testimony is not a deceptive act that would lull Plaintiff into inaction or prevent Plaintiff from investigating the matter. Indeed, after hearing Ms. Scarbo's testimony, Plaintiff concedes that his counsel filed "motions to postpone the trial to further investigate the data retention policy" and that he personally "contacted

7

Sprint Nextel attempting to obtain the retention policies."  (ECF No. 19 at 10; ECF No. 20-1 at 17-18, ¶¶ 32.,34.)  Accordingly, it is clear from the face of the Complaint that Plaintiff was not lulled into inaction, but rather was on inquiry notice on January 31, 2011 that there may be a factual basis for his claim, and Plaintiff and his counsel, in fact, investigated the issue.  Thus, Plaintiff has not sufficiently alleged the rare and exceptional circumstances, which would justify tolling here.

Even if the Court construes Plaintiff's argument as an ignorance of the law claim, his ignorance does not warrant equitable tolling.  *See, e.g., Ormiston v. Nelson*, 117 F.3d 69, 72 n. 5 (2d Cir.1997); *Taylor v. Plousis*, 101 F. Supp.2d 255, 270 (D.N.J.2000); *Crowder v. Master Fin., Inc.*, 176 Md. App. 631, 933 A.2d 905, 927 (2007); *cf. People v. White*, 981 P.2d 624, 626 (Colo. App.1998) (ignorance of time bar contained in section 16–5–402, C.R.S.2007, does not constitute justifiable excuse or excusable neglect to avoid its application).

In summary, the Court finds that Plaintiff has failed to assert any deceptive act by Defendants that would support equitable tolling.  The Court, therefore, will dismiss the Complaint and action as barred by the statute of limitations.

The Court also certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order is not taken in good faith, and *in forma pauperis* status properly is denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Plaintiff files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.  Accordingly, it is

ORDERED that Complaint and action are dismissed with prejudice as time-

barred.  It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied.  It is

FURTHER ORDERED that Plaintiff's Motion to Amend Complaint (ECF No. 9), Renewed Ex Parte Motion to Take Expedited Discovery (ECF No. 10), Motion for Extension of Time to Serve Summons and Complaint (ECF No. 18), and Second Motion to Amend (ECF No. 20) are denied as moot.

DATED April 13, 2015, at Denver, Colorado.

BY THE COURT:


  s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court