IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-02857-RBJ-MJW

BRIAN HICKS,

    Plaintiff,

v.

SPRINT NEXTEL CORPORATION
SPRINT NEXTEL COMPANY, LP,
SPRINT COMMUNICATIONS COMPANY, L.P., and
SPRINT SPECTRUM, L.P.,

    Defendants.

---

ORDER

---

This matter is before the Court on defendants' Motion to Dismiss [ECF No. 46]. The motion has been fully briefed by the parties and is ripe for review. For the reasons discussed in this Order, defendants' motion is granted.

## I.    FACTS

This civil case arises out of a murder conviction. ECF No. 20-1. Plaintiff Brian Hicks argues that defendants (collectively "Sprint") failed to comply with the Stored Communications Act (SCA) by preserving and disclosing cell tower records that would have proved his innocence at trial. *Id.* Mr. Hicks alleges the following timeline of events:

- November 2006–December 2006: Mr. Hicks was incarcerated at the Denver County Jail. There was a pending criminal case against him in which Kaloniann Clark was prepared to testify for the prosecution. *Id.* at ¶ 3.

1

- December 6, 2006: Two masked gunmen kicked in the door of Ms. Clark's home demanding money and drugs. The men ultimately shot and killed Ms. Clark after she attempted to flee. *Id.* at ¶ 5.

- November 2007: Denver Police Department (DPD) Homicide Detective Joel Humphrey contacted Sprint requesting preservation of call detail records and cell tower records for cell phones registered to Willie Clark (unrelated to Ms. Kaloniann Clark) and Shun Birch, suspects in the homicide. *Id.* at ¶ 9.

- January 4, 2008: the DPD obtained a warrant for the suspects' cell tower records which was served upon Sprint. *Id.* at ¶ 45.

- January 2008: The Denver District Attorney's Office brought the case before a grand jury. *Id.* at ¶ 8. The government's theory of the case was that while Mr. Hicks was incarcerated at the Denver County Jail, he solicited Mr. Clark and Mr. Birch to murder Ms. Clark in order to prevent her from testifying against him. *Id.* at ¶ 3. The government alleged that Mr. Hicks made numerous calls from jail containing coded messages instructing Mr. Clark and Mr. Birch to murder Ms. Clark. *Id.* at ¶ 4.

- January 2008: Sprint sent a letter (2008 Letter) to Detective Humphrey confirming that it had provided the DPD with the requested cell tower records. *Id.* at ¶ 19.

- March 2008: Detective Humphrey testified before the grand jury. He claimed that Sprint had not provided the DPD with the cell tower records. He had been informed that in 2006 Sprint retained cell records for two months. *Id.* at ¶¶ 10, 18. The discrepancies between the 2008 Letter and Detective Humphrey's testimony led Mr. Hicks and his counsel to conclude that Detective Humphrey received the cell tower records but did not disclose them to the defense. *Id.* at ¶ 20.

- January 31, 2011: Sprint representative Kerri Scarbo testified for the prosecution during Mr. Hicks' trial. She testified that the 2008 Letter was incorrect because Sprint never provided the DPD with the cell records it requested. *Id.* at ¶¶ 24, 27. She claimed that the cell records would have been purged from Sprint's database by the time the DPD served its warrant. *Id.* at ¶ 28. With respect to Sprint's retention of cell records, Ms. Scarbo testified to the following facts:
    - (1) in 2006 Sprint retained cell records for 60 days, *Id.*;
    - (2) in 2007 Sprint started retaining cell records for 18 months, *Id.* at ¶¶ 37–38; and

2

- o (3) following the policy change in 2007, Sprint could not go back and get records that had already been purged, but records that remained in the system were kept for 18 months, *Id.* at ¶ 37.

- February 4, 2011: The jury found Mr. Hicks guilty on all counts charged in the indictment for Ms. Clark's murder. *Id.* at ¶ 33.

- Winter 2013: Mr. Hicks' appellate counsel provided him with copies of the entire trial record, including transcripts of Ms. Scarbo's testimony. After reading the record and studying the law, Mr. Hicks began to suspect that Ms. Scarbo testified falsely regarding Sprint's data retention policies in order to conceal Sprint's failure to comply with the SCA. *Id.* at ¶¶ 35–36.

- October 20, 2014: Mr. Hicks filed his Complaint. ECF No. 1.

The essence of Mr. Hicks' claim is that Sprint failed to preserve and produce Mr. Clark and Mr. Birch's cell phone records as mandated by 18 U.S.C. §§ 2703(c)(1)(a) and (f)(1). ECF No. 20-1 at 21–27. Sprint moves to dismiss arguing that (1) Mr. Hicks' claim is time-barred; (2) the SCA does not provide a cause of action for a provider's failure to retain a third party's records; and (3) Mr. Hicks fails to allege a violation of the SCA.

## II. STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Iqbal,* 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to

relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g., Twombly*, 550 U.S. at 556.

A defendant may raise an affirmative defense in a Rule 12(b)(6) motion "[i]f the defense appears plainly on the face of the complaint itself." *Lee v. Rocky Mountain UFCW Unions & Emp'rs Trust Pension Plan*, 13 F.3d 405 (10th Cir. 1993) (internal quotations and citations omitted). Therefore, even though "a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'" *Radloff-Francis v. Wyoming Med. Ctr., Inc.*, 524 F. App'x 411, 413 (10th Cir. 2013) (quoting *Aldrich v. McCulloch Props., Inc.,* 627 F.2d 1036, 1041 n.4 (10th Cir.1980)).

When a case involves a pro se party, courts will "review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v. U.S. Government*, 472 F.3d 1242, 1243 (10th Cir. 2007). However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A broad reading of a pro se plaintiff's pleadings "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based . . . conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Id.* Pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## III.   ANALYSIS

### I.   <u>Statute of Limitations.</u>

First, some procedural history is pertinent here.  Upon reviewing Mr. Hicks' Complaint, Magistrate Judge Gordon P. Gallagher determined that Mr. Hicks' SCA claim was untimely and ordered him to show cause as to why his action should not be dismissed as time-barred.  ECF No. 16.  Mr. Hicks filed a response to the order to show cause and moved to amend his complaint.  ECF Nos. 19, 20.  Despite Mr. Hicks' efforts, Judge Lewis T. Babcock dismissed this case after determining that Mr. Hicks' claim was untimely.  ECF No. 21.  Mr. Hicks subsequently filed a Motion for Reconsideration.  ECF No. 23.  Upon reconsideration, Judge Babcock granted Mr. Hicks' motion and vacated the order of dismissal concluding that the court should not have raised and considered the statute of limitations defense *sua sponte*.  ECF No. 28.  Sprint now moves for dismissal asserting in part that Mr. Hicks' claim is untimely.  ECF No. 46.  Although Mr. Hicks' motion to amend his complaint was initially denied as moot due to Judge Babcock's dismissal of the case, because Judge Babcock subsequently granted Mr. Hicks' motion for reconsideration and vacated the order of dismissal, both parties treat Mr. Hicks' Second Amended Complaint as the operative complaint.  *See* ECF Nos. 20-1, 46, 49.

Mr. Hicks brings this action pro se, alleging that Sprint failed to comply with the SCA.  18 U.S.C. §§ 2701, *et seq.*; ECF No. 20-1 at 21–23.  Specifically, he claims that Sprint violated Sections 2703(c)(1)(a) and (f)(1) of the SCA by failing to preserve and produce the cell tower records after receiving a demand for preservation and warrant for the records from the DPD.  ECF No. 20-1 at 21–23.  Section 2703(f)(1) states that a service provider "shall take all necessary steps to preserve records and other evidence in its possession pending the issuance of a

5

court order or other process." *Id.*  Additionally, Section 2703(c)(1)(a) states that a governmental entity may require a service provider to disclose records pertaining to a customer when the governmental entity obtains a warrant.

Under the SCA, "[a] civil action . . . may not be commenced later than two years after the date upon which the claimant first discovered or had a reasonable opportunity to discover the violation."  18 U.S.C. § 2707(f).  This statute of limitations "do[es] not require that the claimant have actual knowledge of the violation."  *Maddalena v. Toole*, No. 2:13-CV-4873-ODW, 2013 WL 5491869, at *4 (C.D. Cal. 2013).  Rather, it "demands only that the claimant have had a reasonable notice to discover the violation."  *Id.*

Mr. Hicks filed his Complaint on October 20, 2014.  ECF No. 1.  Therefore, in order for his claim to be timely, Mr. Hicks could not have had a "reasonable opportunity to discover" the alleged violation prior to October 20, 2012—two years before he brought this action.  Sprint claims that Mr. Hicks did have such an opportunity prior to October 20, 2012, and therefore, by the time he filed his Complaint, the statute of limitations had run.  ECF No. 46 at 4.  Mr. Hicks relies on three doctrines—equitable estoppel, the discovery rule, and equitable tolling—to support his argument that his claim is timely.  ECF No. 49.  For the reasons discussed below, the Court finds that Mr. Hicks' SCA claim is barred by the statute of limitations.

Mr. Hicks first argues that Sprint should be equitably estopped from asserting a statute of limitations defense.  ECF No. 49 at 5.  I disagree.  "Equitable estoppel arises where the parties recognize the basis for suit, but the wrongdoer prevails upon the other to forgo enforcing his right until the statutory time has lapsed."  *Aldrich*, 627 F.2d at 1043 n.7.  Mr. Hicks alleges no facts that establish that he recognized the basis for his suit before the statute of limitations

expired, but that Sprint prevailed upon him to forgo filing suit. Thus, his claim does not warrant an application of equitable estoppel.

Second, Mr. Hicks contends that the SCA's statute of limitations incorporates the "discovery rule" rendering his suit timely. ECF No. 49 at 17. The Court need not decide whether the "discovery rule" applies to Mr. Hicks' SCA claim because under the plain language of 18 U.S.C. § 2707(f), which requires only that the plaintiff have had a reasonable opportunity to discover the violation, his claim is untimely.

Considering the dates given in Mr. Hicks' Complaint, the Court finds that Mr. Hicks had "reasonable opportunity to discover" the alleged SCA violation on January 31, 2011. According to Mr. Hicks, the DPD contacted Sprint requesting preservation of Mr. Clark and Mr. Birch's cell records in November 2007. ECF No. 20-1 at ¶ 9. On January 4, 2008, the DPD served a warrant upon Sprint for the same records. *Id.* at ¶ 45. Sometime prior to Mr. Hicks' trial, he and his defense counsel contacted Sprint and were told that Sprint retained cell tower records for 18 to 24 months. *Id.* at ¶ 18. Sprint further advised defense counsel that the 18 to 24 month retention policy had always been in effect. *Id.* at ¶ 19. This information would have indicated to Mr. Hicks that Sprint had the records in its possession when it received the request for preservation and warrant from the DPD. Additionally, in the 2008 Letter Sprint claimed that it had provided the records to the DPD, which led Mr. Hicks and his defense counsel to conclude that the DPD received the records but failed to disclose them to the defense. *Id.* at ¶¶ 19–20.

However, on January 31, 2011, Sprint representative Kerri Scarbo testified that Sprint did not provide the DPD with the records. *Id.* at ¶ 24. She claimed that the cell records from the night of Ms. Clark's murder would have been purged from Sprint's database by the time the

7

DPD served its warrant. *Id.* at ¶ 28. Ms. Scarbo stated that in 2006, the year of Ms. Clark's murder, Sprint was only retaining cell tower records for 60 days. *Id.* It was not until 2007 that Sprint started retaining its records for 18 months. *Id.* at ¶¶ 37–38. Further, following the 2007 policy change, Sprint was unable to go back and get records that had already been purged, but records that remained in the system were kept for 18 months. *Id.* at ¶ 37. Because Ms. Scarbo did not have a copy of Sprint's data retention policy on hand, she was ordered to forward a copy of the policy to the court upon returning to her office the next day. *Id.* at ¶ 30. However, she failed to do so. *Id.* The court followed up with Ms. Scarbo and ultimately obtained some documents from her. *Id.* at ¶ 31. However, the materials she provided to the court were unrelated to Sprint's data retention policy. *Id.* Mr. Hicks moved to postpone the trial to further investigate the policy, but his motion was denied. *Id.* at ¶ 32. The following day the jury found Mr. Hicks guilty on all counts charged in the indictment for Ms. Clark's murder. *Id.* at ¶ 33.

Sometime in the winter of 2013, Mr. Hicks' appellate counsel "provided him with copies of the entire trial record, including transcripts of Ms. Scarbo's testimony." *Id.* at ¶ 35. After comparing Ms. Scarbo's testimony "with oher [sic] facts in the record" and researching "cell site location law," Mr. Hicks began to suspect that Ms. Scarbo had testified falsely in an attempt to conceal Sprint's failure to comply with the SCA. *Id.* Mr. Hicks realized that it was quite possible that Sprint possessed the records in question when the DPD requested them in November of 2007. *Id.* at ¶ 38. His theory is as follows: The murder took place on December 6, 2006. *Id.* If Sprint was retaining its records for 60 days in 2006, the records would have been retained until February 3, 2007. *Id.* And if the retention policy was extended from 60 days to 18 months in January or the beginning of February of 2007, the records would have been in Sprint's

8

possession in November of 2007 when it received the request for preservation from the DPD. *Id.* Thus, Mr. Hicks claims that Sprint purged the records after receiving the request for preservation and warrant from the DPD in violation of the SCA.

As these facts show, it is apparent from the face of the Complaint that Mr. Hicks had a reasonable opportunity to discover Sprints' alleged failure to preserve and disclose the cell tower records when he heard conflicting testimony regarding Sprint's retention policy during his murder trial. On January 31, 2011, Ms. Scarbo testified regarding Sprint's retention policies in 2006 and 2007. Although she testified that Sprint had not produced the cell records for the DPD because the records had already been purged, her testimony regarding the retention policies indicated that Sprint possessed the records when it received the request for preservation and warrant from the DPD. Thus, Mr. Hicks' SCA claim rests on discrepancies in Ms. Scarbo's testimony.

Mr. Hicks argues that his claim is timely because he did not discover the facts underlying the alleged violation until after he reviewed the trial record at some point during the winter of 2013; however, the SCA "do[es] not require that the claimant have actual knowledge of the violation." *Maddalena*, 2013 WL 5491869, at *4. Furthermore, Mr. Hicks' claim that he needed to compare Ms. Scarbo's testimony to "other facts on the record" to discover the SCA violation is unpersuasive. Mr. Hicks' reference to "other facts on the record" is too vague and conclusory to be presumed true. *Iqbal,* 556 U.S. at 681 (purely conclusory allegations are not entitled to be presumed true). And Mr. Hicks gives no indication that the "other facts on the record" were unavailable to him during his January 2011 trial.

Finally, Mr. Hicks argues that the statute of limitations should be equitably tolled. ECF No. 49 at 15–17. I disagree. "[E]quitable tolling is appropriate only in rare and exceptional circumstances." *Everplay Installation Inc. v. Guindon*, 471 F. App'x 812, 817 (10th Cir. 2012) (quoting *Sigala v. Bravo,* 656 F.3d 1125, 1128 (10th Cir.2011)). "Generally, courts have tolled the statute of limitation when plaintiffs' failure to file their claims within the statutory period is excused by the defendant's misconduct." *Alexander v. Oklahoma*, 391 F.3d 1155, 1161 (10th Cir. 2004). Here, Mr. Hicks asserts that Sprint's misconduct—Ms. Scarbo's failure to produce Sprint's retention policy—prevented him from discovering Sprint's SCA violation within the limitations period. ECF No. 49 at 8. He recognizes, however, that he "later discovered evidence from the trial record that suggested Ms. Scarbo's testimony was false, and that Sprint failed to comply with the SCA's retention provisions[.]" *Id.* As stated above, Mr. Hicks had a "reasonable opportunity to discover" the discrepancies in Ms. Scarbo's testimony which now form the basis for his SCA claim on January 31, 2011 during his murder trial. Although Mr. Hicks would have benefitted from receiving a copy of Sprint's retention policy, he had a reasonable opportunity to discover the violation through other means.

In sum, Mr. Hicks' SCA claim is untimely. Dismissal is appropriate because looking to "the dates given in the complaint" it is clear that "the right sued upon has been extinguished." *Radloff-Francis*, 524 F. App'x at 413. Therefore, the Court need not address whether the SCA provides a cause of action for a provider's failure to retain a third party's records or whether Mr. Hicks' Complaint fails to allege a violation of the SCA.

## ORDER

For the reasons described above, defendants' motion to dismiss [ECF No. 46] is GRANTED.

DATED this 15th day of March, 2016.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge